Marion F. GOODWIN, Respondent,

v.

Lawrence M. GOODWIN, Appellant.

No. 22074.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1955.

Randolph P. Rogers, Jr., Martin J. Purcell, James C. Mordy, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, for appellant.

Roy P. Swanson, Richard G. Poland, Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, Marion F. Goodwin, and defendant, Lawrence M. Goodwin, were divorced in the State of Connecticut, June 25, 1948. Plaintiff sued herein for a sum alleged to be due her as the balance of alimony for the year 1951. From a judgment in favor of plaintiff, in the amount of $2,151.74, defendant appeals.

Plaintiff's petition is based on a written agreement entered into between her and defendant on July 26, 1950, duly signed and acknowledged by both parties, which agreement is filed as her Exhibit "A" and made a part of her petition. Incorporated in

said agreement and forming a part thereof is a "Stipulation" between the parties, dated January 18, 1948, filed with the Connecticut divorce court. It was recited in the stipulation, in effect, that plaintiff herein had filed a suit for divorce against defendant; that, if plaintiff's petition be granted, she be given custody of their two minor children; and that "defendant shall thenceforth pay to the plaintiff the sum of $200 per month as alimony and support for the minor children, and in addition, *the defendant shall pay to the plaintiff as alimony and support* 25% of the amount by which his gross income shall exceed the sum of $6,000 per year." The divorce was granted to plaintiff. She was awarded custody of the children, alimony of $100 per month, and $50 per month support for each of the children. The stipulation was approved but was not incorporated nor referred to in the divorce decree.

In the agreement sued on it was further recited that a dispute had arisen between the parties regarding interpretation of the terms of the stipulation, *as to the manner by which defendant's "gross income" should be determined.* The parties agreed therein upon the method by which the amount due plaintiff on account of "gross income" would be determined. That was the subject of the compromise agreement.

Thereafter, a further dispute arose between the parties *as to the manner of determining defendant's "gross income"* for the year 1950. By an instrument dated July 16, 1951, this dispute was compromised and settled, and it was agreed that the $50 monthly payment for the support of a deceased child should not be paid to plaintiff from and after August, 1950. That instrument was pleaded in defendant's counterclaim, attached thereto, made a part thereof, and filed in this case, together with the answer and counterclaim. It was introduced and received into evidence without objection.

One of the children died August 8, 1950, prior to the filing in the Connecticut court of the 1950 agreement, on November 3, 1950. The other child reached majority in November, 1951.

It is plaintiff's contention, in the case at bar, that by the stipulation of January 18, 1948, as modified by the agreement of July 26, 1950, she is entitled to receive, for *herself,* as alimony and support for the year 1951, the sum of $100 per month, plus 25% of defendant's gross income. Defendant admits that he should pay plaintiff $100 per month, but claims that, since one child died August 8, 1950, and the other child reached majority in November of 1950, he *is required to pay plaintiff only one-half* of 25% of his gross income for the year 1951. Defendant has not paid the $100 monthly maintenance for the deceased child since her death, nor any sums for the other child since he reached majority, nor is any sum claimed by plaintiff, in this suit, on account of the children. The sole question at issue is whether plaintiff is entitled to receive 25% of defendant's gross income for the year 1951, notwithstanding the death of the one child and the majority of the other.

It is agreed that the amount of the judgment herein is correct if plaintiff is entitled to recover anything in this action.

Both parties hereto agree that the instrument sued on is clear and unambiguous, but each contends for a different construction. (An anomalous situation!) The gist of defendant's monetary obligation to plaintiff is stated in the stipulation signed by the parties on January 18, 1948. Defendant thereby agreed to pay plaintiff $200 thenceforth per month as alimony and support of the minor children " * * * and, in addition * * * shall pay to the *plaintiff* as alimony and support 25% * * *." It is noted that the latter quoted clause, unlike the former, makes no mention of the minor children. We consider that fact significant. The Connecticut court *decreed* that "defendant pay the plaintiff alimony of $100 per month and $50 per month for support of each of said minor children, payable monthly." No mention is made therein of any part of defendant's gross

income. The stipulation was not incorporated in the decree nor referred to therein.

■ Defendant contends that the words "alimony and support," used in the clause regarding 25% of gross income, means support for plaintiff and support for the minor children. "Alimony" has a technical meaning, to-wit: support for the wife. Marley v. Marley, infra. Defendant contends that, since "support" was used in the stipulation in connection with "gross income," having been previously used in connection with the provision made for the children, we can assign no other meaning than that the support thus referred to is for the children. He contends that "support" means "child support." He cites Marley v. Marley, 356 Mo. 870, 204 S.W.2d 261, 264. That case held that alimony, in divorce language, means support for the wife alone; and that "maintenance" means support for children.

The Supreme Court, therefore, has held that the words "alimony" and "maintenance," both mean support. In this connection see "support," Webster's New International Dictionary, Second Edition. However, when used in connection with divorce, the former, unexplained or qualified, refers to support for the wife; but the latter, unexplained or qualified, means support for children. In North v. North, 339 Mo. 1226, 100 S.W.2d 582, 584, 109 A.L.R. 1061, the court treated "alimony, support, and maintenance" as referring to wife support, no children being involved.

■■ It is in evidence that these parties were represented by counsel in their litigation, and in the preparation and execution of their agreements herein. We will give the words used by the parties their established legal meaning. Bearing the above in mind we hold that the first clause of the stipulation specifically provided that defendant should pay to plaintiff a sum of $200 per month for *herself and her two children;* and that, by the second provision, defendant agreed to pay *plaintiff,* in addi-

tion to sums paid to her as alimony and support of herself and children, 25% of his gross income, as alimony for herself. Otherwise, a lawyer-draftsman would, no doubt, have mentioned the children, in the latter provision, or would have used the technical term, "maintenance," thereby referring to them. This is the meaning that must be given to it in view of the language used.

■ In neither of the agreements, that of 1950 or that of 1951, was there any mention made of any dispute between the parties, as to any part of the stipulation except in connection with the *method* of arriving at defendant's gross income. Therefore, neither of these agreements may be said to have modified or changed the effect of the language used in the stipulation of 1948, with reference to the question of whether plaintiff alone should receive the full 25% of defendant's gross income.

We have ruled this case on the theory that the contract is plain and unambiguous on its face. However, from a study of the 1951 agreement. which is before us, it is apparent that the parties themselves arrived at the same construction that we have here announced. This is indicated by reason of the fact that the 1950 agreement did not become effective until it was filed in Connecticut, November 3, 1950, after the death of one of the children, in August, 1950. Nevertheless, defendant raised no question therein regarding plaintiff's right to receive the full 25% of defendant's gross income, over $6,000, for the year 1950.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.